## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**NICHOLAS ROBERT STROBEL,**

      **Plaintiff,**

      **v.**                           **CASE NO.  24-3105-JWL**

**UNITED STATES OF AMERICA,**
**et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, a federal prisoner, brings this pro se civil rights action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Plaintiff is incarcerated at FCI-Leavenworth in Leavenworth, Kansas ("FCIL"), formerly named USP Leavenworth ("USPL").  The Court grants Plaintiff an opportunity to file an amended complaint that cures the deficiencies noted in this Memorandum and Order.

### I.  Nature of the Matter before the Court

Plaintiff's original complaint (Doc. 1) was not on a Court-approved form and consisted of 262 pages.  Plaintiff has now submitted his Complaint (Doc. 15) on the Court-approved form. The Court granted Plaintiff leave to proceed in forma pauperis.[1]

Plaintiff's claims are based on alleged violations of his rights that he claims occurred during his incarceration at FCIL and at FCI-Florence in Florence, Colorado.  On the section of the Complaint where Plaintiff is to set forth his Counts in this case, Plaintiff merely states "see complaint," directing the Court to his original complaint that was not on the Court-approved form.  *Id*. at 9.  Plaintiff lists multiple defendants from both FCI-Florence and FCIL.  For relief,

---

[1] Plaintiff has expressed his concern over whether or not the Court received his initial partial filing fee.  *See* Doc. 12, Doc. 13, and Doc. 14, at 1.  The Court has received Plaintiff's initial partial filing fee.

Plaintiff seeks "nation wide Kosher training & knowledge push for religious rights & monetary, compensatory & punitive." *Id*. at 11.

In his original complaint, Plaintiff states that he is bringing claims under *Bivens*, the Religious Freedom Restoration Act ("RFRA"), and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  (Doc. 1, at 1.)

Plaintiff alleges that he was denied access to his legal work at FCI-Florence.  *Id*. at 7–15. Plaintiff references a timeframe of January 6, 2023, until August 2, 2023.  *Id*. at 15.  He states that he was transferred to the Oklahoma Transfer Center on August 7, 2023.  *Id*.

Plaintiff then addresses the denial of access to legal work at FCIL.  *Id*. at 16.  Plaintiff alleges that he began explaining to FCIL staff that he needed legal work for time-sensitive filings.  *Id*.  Plaintiff sets forth the various cop-outs he submitted to FCIL staff and his actions taken to exhaust his administrative remedies.  *Id*. at 16–17, 21.

Plaintiff also sets forth the conditions of confinement at FCIL during a lockdown in March 2024, including the water being shut off for several days, missing meals due to food service and the chaplains not taking religious requests seriously, and loss of property .  *Id*. at 19– 20.

Plaintiff argues that Defendants at FCI-Florence violated RFRA and Plaintiff's Eighth Amendment rights relating to the practice of his religion.  *Id*. at 23.  He also claims that Defendants at FCIL violated RFRA and his First and Eighth Amendment rights relating to the practice of his religion.  *Id*. at 24–25.  His claims against FCIL defendants focus on the denial of the right to kindle the flame for Shabbos and his religious meals.  *Id*.

In his request for relief in his original complaint, he seeks injunctive relief against both FCI-Florence defendants and FCIL defendants.  *Id*. at 29.  Plaintiff also seeks compensatory and

punitive damages. *Id*.

## II. Statutory Screening

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant

did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Venue

Plaintiff suggests that venue in this Court is proper for all of his claims because FCI-Florence and FCIL are both in the same circuit. (Doc. 1, at 1; Doc. 15, at 2.) However, they are not in the same district.

Section 1391 "govern[s] the venue of all civil actions brought in district courts of the United States." 28 U.S.C. § 1391(a)(1).  Under 28 U.S.C. § 1391(b):

> A civil action may be brought in –
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . .

28 U.S.C. § 1391(b)(1)–(2).

Section 1404 grants courts discretion to transfer "any civil action" in the "interest of justice." 28 U.S.C. § 1404(a).  In this case, however, Plaintiff has included claims against both FCIL and FCI-Florence, and Plaintiff fails to even distinguish the claims by setting them forth in individual counts.  The Court is directing Plaintiff to submit an amended complaint that cures the deficiencies noted in this Memorandum and Order.  Therefore, Plaintiff should only include claims relating to his incarceration at FCIL in his amended complaint.  If he believes he has claims based on his incarceration at FCI-Florence and against FCI-Florence defendants, he should bring those in a separate action in the United States District Court for the District of Colorado.

## 2. Rule 8

Plaintiff's Complaint submitted on the Court-approved form merely refers back to his original complaint consisting of approximately 262 pages.  Neither complaint sets forth his claims in individual counts.  Plaintiff directs the Court to Exhibit 28 and asks the Court to read all of the messages between Plaintiff and staff, claiming the exhibit supports all of his claims regarding RFRA, due process violations, Eighth Amendment claims, and First and Fifth Amendment claims.  (Doc. 1, at 20.)  This Court is not required to sift through hundreds of pages

of exhibits to put together causes of action for Plaintiff.  Any amended complaint that he submits must comply with Fed. R. Civ. P. 8.

In filing an amended complaint, Plaintiff must comply with Fed. R. Civ. P. 8's pleading standards.  Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Plaintiff's Complaint fails to comply with this rule.  "It is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis.  Only a generalized statement of the facts from which the defendant may form a responsive pleading is necessary or permissible." *Frazier v. Ortiz*, No. 06-1286, 2007 WL 10765, at *2 (10th Cir. Jan. 3, 2007) (emphasis omitted) (quoting *New Home Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957)).

### 3.  Rules 18 and 20

Plaintiff not only includes claims based on his incarceration at both FCI-Florence and FCIL, he also references various unrelated claims.  In his original complaint, he mentions the denial of razors, the denial of legal materials, an encumbrance of funds on March 1, 2023, deprivation of court access, the loss of property, and the denial of religious practices.  He also makes claims regarding the unsanitary conditions and lack of proper meals at FCIL during the March 2024 lockdown.

Plaintiff has set forth unrelated claims in his Complaint.  Plaintiff must follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing an amended complaint.  Rule 20 governs permissive joinder of parties and pertinently provides:

> (2) ***Defendants***.  Persons . . . may be joined in one action as defendants if:
>> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).  Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues."  *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted).  The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.").

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." *Id.* It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act.  *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant.  Under Rule 20(a)(2), he may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact.  He may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim.  Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately).  In any amended complaint, Plaintiff should set forth the transaction(s) or occurrence(s) which he intends to pursue in accordance with Rules 18 and 20, and limit his facts and allegations to properly-joined defendants and occurrences.  Plaintiff must allege facts in his complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

### 4.  Bivens

Plaintiff has not shown that a *Bivens* remedy is available for his claims.  The Tenth Circuit recently noted that the Supreme Court "is on course to treating *Bivens* as a relic of the 20th century" and that "[t]his development has been gradual, but relentless."  *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1355 (10th Cir. 2024), *rehr'g denied* (Apr. 5, 2024).  The Tenth Circuit in *Logsdon* found that:

> Without explicitly overruling its three acknowledged precedents, the [Supreme] Court has shown an increasing willingness to distinguish them, now stating that the ultimate question to ask when determining whether the courts should recognize a *Bivens* cause of action not created by Congress is ordinarily only "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492, 142 S. Ct. 1793, 213 L.Ed.2d 54 (2022). And the circumstances in which the answer to the question is "no" appears to comprise a null set. *See id.* at 503, 142 S. Ct. 1793. (Gorsuch, J., concurring) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action? It seems to me that to ask the question is to answer it. To create a new cause of action is to assign new private

rights and liabilities—a power that is in every meaningful sense an act of legislation."); *see also Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("[W]e are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (quoting *Egbert*, 596 U.S. at 491, 142 S. Ct. 1793) (citation omitted)). The Court has said in effect that almost any difference between the case at hand and the three Court precedents can justify rejecting a cause of action. *See Egbert,* 596 U.S. at 503, 142 S. Ct. 1793 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").

And, perhaps even more striking, the Court has justified a departure from those precedents even when the facts are virtually the same if the government can provide a reason for not recognizing a cause of action that was not considered in the applicable precedent. Thus, in *Egbert* itself the Court considered an excessive-force claim, similar to the one in *Bivens*, against a federal officer. *See Egbert*, 596 U.S. at 495, 142 S. Ct. 1793 ("*Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury." (internal quotation marks omitted)). But it held that the court of appeals erred by recognizing a cause of action under *Bivens*, distinguishing *Bivens* based on facts that have no bearing on the elements of an excessive-force claim: the incident arose in the "border-security context," and Congress had created remedies for misconduct by government agents. *See id.* at 494, 142 S. Ct. 1793. Given such hurdles placed in the way of a *Bivens* cause of action, Mr. Logsdon has no claim.

*Id*. at 1355–56.

The Tenth Circuit in *Logsdon* found that "[a] second independent ground for not recognizing a *Bivens* action . . . is that the availability of alternative remedies for misconduct . . . suggests that this court should not be the institution to create a remedy." *Id*. at 1359. "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id*. (quoting *Egbert*, 596 U.S. at 493). The Tenth Circuit quoted *Egbert* as follows:

> "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." *Id.* at 498, 142 S. Ct. 1793 (internal quotation marks omitted).

*Id.*

In *Silva*, the Tenth Circuit held that the Bureau of Prison's Administrative Remedy Program "ARP" was adequate. *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (finding that the key takeaway from *Egbert* is "that courts may dispose of *Bivens* claims for 'two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect plaintiffs' ") (citation omitted); *see also Noe v. United States Gov't*, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023) ("We need not decide whether Noe's case is meaningfully different from *Carlson*, because in the wake of *Egbert* and *Silva* . . . the availability of the ARP is sufficient to foreclose a *Bivens* claim despite any factual similarity between the two.").

In *Silva*, the Tenth Circuit had little difficulty in concluding "that the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring.' " *Silva*, 45 F.4th at 1141 (citation omitted). The *Silva* court found that "because *Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers,' . . . the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim." *Id.* (citing *Egbert*, 142 S. Ct. at 1806 (quoting *Malesko*, 534 U.S. at 71, 122 S. Ct. 515)).

Based on the reasoning set forth in the recent Tenth Circuit opinions cited above, the Court finds that Plaintiff fails to state a claim for relief under *Bivens*.

### 5. Compensatory Damages

Any request for compensatory damages is barred by 42 U.S.C. § 1997e(e), unless Plaintiff alleges a physical injury.  Section 1997e(e) provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."  42 U.S.C. § 1997e(e).

"The plain language of the statute does not permit alteration of its clear damages restrictions on the basis of the underlying rights being asserted."  *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) .  "The statute limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional."  *Id.* (citing *Robinson v. Page,* 170 F.3d 747, 748 (7th Cir.1999)).

Although it is unclear whether any potential claim for property damage could survive § 1997e(e), Kansas prisoners have an adequate state post-deprivation remedy.  *See generally, Sawyer v. Green*, 316 F. App'x 715, 717, 2008 WL 2470915, at *2 (10th Cir. 2008) (finding Kansas county prisoner could seek relief in state courts to redress alleged deprivation of property); *Smith v. Colorado Dept. of Corr.*, 23 F.3d 339, 340 (10th Cir. 1994) ("Fourteenth Amendment due process guarantees pertaining to property are satisfied when an adequate, state postdeprivation remedy exists for deprivations occasioned by state employees."); *see also Ybanez v. Scott*, 2015 WL 1258290, at *7 (D. Colo. March 17, 2015) (noting that the 10th Circuit does not appear to have addressed the issue of whether 1997e(e) bars an award of compensatory damages for the loss of property, but in *Allen v. Reynolds*, 475 F. App'x 280, 283–84 (10th Cir.

2012), the court appeared to reject, in *dicta*, an argument that an inmate's demand for compensatory damages for the destruction of personal photographs survived the lack of a physical injury under the PLRA); *see also Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (finding in case involving confiscated magazines that inmate did not suffer physical injury in connection with his constitutional claims, and allegation that personal property was lost, confiscated, or damaged does not state a claim where remedy is in state court).

### 6. RFRA and RLUIPA

Plaintiff asserts claims under the Religious Freedom Restoration Act ("RFRA") (42 U.S.C. § 2000bb *et seq.*). Although the Supreme Court has held that damages claims are permissible in individual-capacity suits under RFRA, Plaintiff is subject to § 1997e(e) as stated above. *See Tanzin v. Tanvir*, 141 S. Ct. 486, 489–93 (2020) ("We conclude that RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities.")[2] Individuals do not enjoy sovereign immunity. *Id*. at 493.

To the extent plaintiff seeks damages under RFRA against the Defendants in their official capacities, sovereign immunity bars any such claim. *See Hale v. FBOP*, 759 F. App'x 741, at n.4 (10th Cir. 2019) ("RFRA does not waive the federal government's sovereign immunity from damages.") (citing *Davila v. Gladden*, 777 F.3d 1198, 1210 (11th Cir. 2015); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 840-41 (9th Cir. 2012); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006)). The congressional waiver of sovereign immunity under RFRA is limited to RFRA claims seeking injunctive relief. *See Crocker v. Durkin,* 159 F. Supp. 2d 1258, 1269 (D.Kan.2001), *aff'd,* 53 F. App'x 503 (10th Cir.

---

[2]  The Court notes that the plaintiffs in *Tanzin* were not prisoners.  Therefore, 42 U.S.C. § 1997e(e)'s physical injury requirement was not applicable.

2002).  However, claims for injunctive relief become moot when a prisoner is transferred to a different facility. *See Crocker*, 53 F. App'x at *1 (inmates' transfer from USPLVN mooted their claim for injunctive relief to bar USPLVN officials' alleged violation of RFRA).

Plaintiff also asserts jurisdiction under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") (42 U.S.C. § 2000cc *et seq.*), but does not appear to mention it in the body of his complaints.  "[N]either RFRA nor RLUIPA include waivers of the federal government's sovereign immunity for actions requesting money damages." *The Cherokee Nation West v. U.S. Army Corps of Engineers*, 2016 WL 4548441, at *4 (N.D. Okla. Aug. 31, 2016) (citing *see United States v. Dillard*, 884 F. Supp. 2d 1177, 1182 (D. Kan. 2012), *aff'd,* 795 F.3d 1191 (10th Cir. 2015) (no waiver of federal government's sovereign immunity for monetary damages claims under RFRA or RLUIPA)); *see also Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015) (unpublished) (holding that "RLUIPA claims regarding prison conditions become moot if the inmate plaintiff is released from custody.") (citation omitted).

Furthermore, under RLUIPA, " 'government' is defined as 'a State, county, municipality, or other governmental entity created under the authority of a state,' and 'any branch, department, agency, instrumentality or official,' thereof, and 'any other person acting under color of State law.'" *Rogers v. U.S.*, 696 F. Supp. 2d 472, 486 (W.D. Pa. 2010) (citing 42 U.S.C. §2000cc-5(4)). "Accordingly, federal courts have held that RLUIPA 'only applies to state and local governments, not a federal prison.'" *Id*. (citing *Pineda–Morales v. DeRosa,* 2005 WL 1607276, at *4 (D.N.J. 2005); *see also Navajo Nation v. U.S. Forest Service,* 535 F.3d 1058 (9th Cir.2008)).  "However, RLUIPA's provision allowing a plaintiff to assert a violation of RLUIPA as a claim or defense in a judicial proceeding does not apply to the federal government." *Asher v. USDOJ*, 2017 WL 4286598, at *2 (D. S.C. 2017) (citing *see*  42 U.S.C. § 2000cc-5(4)(B);

*Navajo Nation v. U.S. Forest Serv.,* 535 F.3d 1058, 1077 (9th Cir. 2008) ("RLUIPA, by its terms, prohibits only state and local governments from applying regulations that govern land use or institutionalized persons to impose a "substantial burden" on the exercise of religion."); *see also Garraway v. Lappin*, 490 F. App'x 440, 443 n.2 (3d Cir. 2012) (finding district court properly dismissed the plaintiff's RLUIPA claims because RLUIPA does not apply to federal government action); *Rogers v. United States*, 696 F. Supp. 2d 472, 486 (W.D. Penn. 2010)); *see also Hasbajrami v. Hill*, 2022 WL 486617, at n. 2 (W.D. Pa. 2022) ("RLUIPA does not apply to employees of federal prisons.") (citations omitted).

### 7. Official Capacity Claims

Any official capacity claims against federal officials would also be subject to dismissal. *See Peterson v. Timme*, 621 F. App'x 536, 541 (10th Cir. 2015) (unpublished) (finding that a suit against a federal official in his official capacity is actually a suit against the sovereign—the United States—and is barred by sovereign immunity) (citing *Farmer v. Perrill,* 275 F.3d 958, 963 (10th Cir.2001) ("[A]ny action that charges [a federal] official with wrongdoing while operating in his or her official capacity as a United States agent operates as a claim against the United States."); *accord Simmat v. U.S. Bureau of Prisons,* 413 F.3d 1225, 1231 (10th Cir.2005)). "Ordinarily, federal courts lack jurisdiction to entertain such claims in accordance with principles of sovereign immunity." *Id*. (citing *Governor of Kan. v. Kempthorne,* 516 F.3d 833, 841 (10th Cir.2008) ("[C]laims of sovereign immunity implicate our jurisdiction . . . ."); *Merida Delgado v. Gonzales,* 428 F.3d 916, 919 (10th Cir.2005) ("In general, federal agencies and officers acting in their official capacities are also shielded by sovereign immunity.")).

### 8. Injunctive Relief

Plaintiff seeks injunctive relief in the form of nationwide training, knowledge, and a push

for religious rights.  Rule  65 of the Federal Rules of Civil Procedure provides that:

**(d) Contents and Scope of Every Injunction and Restraining Order.**

> **(1)  *Contents***.   Every  order  granting  an  injunction  and  every restraining order must:
> **(A)** state the reasons why it issued;
> **(B)** state its terms specifically; and
> **(C)**  describe  in  reasonable  detail—and  not  by  referring  to  the complaint  or  other  document—the  act  or  acts  restrained  or required.
>
> **(2)  *Persons Bound*.**   The  order  binds  only  the  following  who receive actual notice of it by personal service or otherwise:
> **(A)** the parties;
> **(B)**  the  parties'  officers,  agents,  servants,  employees,  and attorneys; and
> **(C)**  other  persons  who  are  in  active  concert  or  participation  with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(d).

Plaintiff should keep Rule 65 in mind when submitting an amended complaint.  Plaintiff should indicate what specific injunctive relief he is seeking.  Injunctive relief may only bind the parties set forth in Rule 65(d)(2).

Furthermore, a transfer moots any request for injunctive relief against defendants from the former prison.  Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies.  *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010).  "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing."  *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*.  Consequently, "[m]ootness is a threshold issue because the existence

of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *O'Shea v. Littleton*, 414 U.S. 488, 495 1974).  The Tenth Circuit has applied this principle to § 1983 actions brought by inmates, and held that an inmate's transfer from one prison to another generally renders moot any request for injunctive relief against the employees of the original prison concerning the conditions of confinement.  *See Green v. Branson*, 108 F.3d 1296, 1299–1300 (10th Cir. 1997); *see also Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (inmate's release from prison moots his claims for declaratory and injunctive relief); *McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999) (recognizing prisoner's release from prison mooted his § 1983 claim for injunctive relief); *Love v. Summit County*, 776 F.2d 908, 910 n.4 (10th Cir. 1985) (noting transfer of inmate to different prison renders his § 1983 claim for injunctive relief moot).

The mootness doctrine is based on the reality that even if the inmate receives injunctive relief, the defendants from the former prison would be unable to provide the relief to the inmate.

## V. Response Required

The Court grants Plaintiff an opportunity to submit an amended complaint that cures all the deficiencies noted in this Memorandum and Order.  Failure to respond by the deadline may result in dismissal of this matter without further notice.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff shall have until **November 4, 2024** to submit an amended complaint on the court-approved form that cures all the deficiencies noted in this Memorandum and Order.  Failure to comply by the deadline may result in dismissal of this matter without further notice.

The Clerk is directed to send § 1331 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated October 4, 2024, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**