IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NICHOLAS ROBERT STROBEL,

    **Plaintiff,**

    v.                                              CASE NO. 24-3105-JWL

UNITED STATES OF AMERICA,
et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, a federal prisoner, brings this pro se civil rights action. Plaintiff is incarcerated at FCI-Leavenworth in Leavenworth, Kansas ("FCIL"). On December 20, 2024, the Court entered a Memorandum and Order (Doc. 20) ("M&O") finding that the proper processing of Plaintiff's claims for injunctive relief under RFRA and the First Amendment could not be achieved without additional information, and directing FCIL officials to submit a *Martinez* Report. The *Martinez* Report (Doc. 21) (the "Report") has now been filed. The Court's screening standards are set forth in the Court's Memorandum and Order at Doc. 16.

**I. Nature of the Matter before the Court**

Plaintiff's Amended Complaint sets forth claims under the Religious Freedom Restoration Act ("RFRA") (42 U.S.C. § 2000bb *et seq*.). Plaintiff states that he is suing Defendants in their individual and official capacities. (Doc. 19, at 1.) Plaintiff states that he is proceeding under RFRA only, and is dropping all other counts previously asserted. *Id*. at 8.

Plaintiff alleges that he has been prevented from practicing his religion at FCIL. *Id*. at 2. Plaintiff claims that Defendants have substantially burdened the practice of his religion involving: Shabbos; diet; blessings; and chapel time. *Id*.

1

Plaintiff alleges that he was only allowed to attend chapel five times in the last calendar year. *Id*. at 5. Plaintiff alleges that Defendant Sutton interrupted Plaintiff's Hebrew blessing to welcome the Shabbat when "he commanded to get the burned match from [Plaintiff], a match by Jewish law [Plaintiff] should not have touched again." *Id*. He also claims that he was not provided with a sufficient amount of matzah or grape juice, and the grape juice was not kosher. *Id*. On two occasions, Plaintiff was not called to chapel in time for the candle lighting. *Id*. at 6. Plaintiff also alleges that he has struggled to get three kosher meals per day. *Id*.

Plaintiff seeks to be allowed to light the candles by the allowed time and recite the blessing joyfully and proudly every Friday, and to be provided with no less than four ounces of grape juice and one matzo cracker for the blessings. *Id*. at 9. Plaintiff also seeks three kosher meals per day. *Id*. at 10. He claims that staff do not know the difference between kosher and halal meals, and food is served on standard chow hall plates/trays. *Id*. at 11. Plaintiff states that the arrival of FSA Black remedied some issues, but the remedies "do not negate the harm, irreparable harm done by Sears & Shadoan." *Id*.

Plaintiff names as defendants: the United States of America; (fnu) Hudson, Former FCIL Warden; (fnu) Carter, FCIL Warden; (fnu) Aletary[1], FCIL Associate Warden; (fnu) Belter, FCIL Associate Warden; (fnu) Shadoan, FCIL Captain; (fnu) Sutton, FCIL Supervisory Chaplain; (fnu) Son, FCIL Chaplain; (fnu) Sears, FCIL Food Service Administrator; and (fnu) Mcloud, FCIL Food Service Officer. Plaintiff's request for relief seeks to have the BOP train staff and inmates responsible for religious diets as follows: kosher is kosher; halal is not kosher; pareve is neutral and OK for kosher inmates; if it does not say kosher, kosher dairy, pareve or have a K in some form or a Ⓤ on the label/package, it is not kosher. *Id*. at 19. Plaintiff also seeks

---

[1] In the Report, this defendant is referred to as "Alatary." (Doc. 21–1, at 2.)

compensatory and punitive damages. *Id*. Plaintiff seeks to be "allowed to bring in the Sabbath as He ordered and Jewish law states." *Id*.

## II. The Report

The Report provides that several of the individuals named as defendants either no longer work at FCIL or no longer work in the position listed. (Doc. 21–1, at 3.) "Specifically, former Warden Donald Hudson retired from the FCI Leavenworth and BOP on or about December 30, 2023; former Food Service Administrator Victor Sears transferred to a BOP facility in Florida on or about February 25, 2024; and former Acting Captain Brandon Shadoan has not held the Acting Captain position since on or about January 5, 2024." *Id*.

The Report provides that Plaintiff was interviewed on January 23, 2025, and during the interview Plaintiff "stated his concerns regarding Chapel attendance occurred after he filed his Amended Complaint and that the issues as it relates to Kosher meals is presently resolved by the new Food Service Administrator." *Id*. at 6. The Report further provides that:

> Consistent with his Amended Complaint, Plaintiff indicated that he is not always called to Chapel on Fridays; that sometimes he is called late (after sunset); and that he is typically called once a month. Plaintiff indicated that he would be good with being called earlier in the day to Chapel on Fridays. Ensuring sufficient time to light the candles ahead of sunset seemed to be a primary concern for the Plaintiff. Plaintiff stated that lately Chaplaincy Services has been bringing juice and matzah to his Unit and that they have been "decent" about doing it in the past month. Plaintiff also indicated that he had concerns regarding accommodations as it relates to the Hannukah celebration this past Hannukah holiday.
> Regarding juice and matzah for the blessings, Plaintiff indicated that it takes about 9 oz. to do the blessing and that everyone is supposed to get a juice box. As for the number of other Jewish inmates in his Unit that participate in the blessings, Plaintiff indicated that the number has ranged from three to six inmates since he arrived in his current Unit.
> Regarding the June 29, 2024, claim that Chaplain Sutton interrupted his blessing, he stated that he had not completed the blessing before being interrupted by Chaplain Sutton to give him

the book of matches back. Plaintiff stated that this interruption of the blessing was rude and that the Chaplain could have waited.

Regarding Kosher meals, Plaintiff[']s primary concern relates to former Food Service Administrator ("FSA") Sears. Plaintiff indicated that there was a time in early 2024 where FSA Sears decided to serve the common fare (religious meals) on regular trays. Plaintiff indicated that this occurred only for a few days before it was rectified.

Plaintiff indicated that his concern with former Acting Captain Shadoan was that he was a part of the decision to place common fare (religious meals) on regular trays. Plaintiff further noted, however, that former Acting Captain Shadoan did specifically allow him to have Hannukah candles last year.

As for the harm that Plaintiff indicated he suffered from former FSA Sears and former Acting Captain Shadoan, Plaintiff indicated that he could not eat meals for a couple days and that he did not eat that much during the few days when common fare (religious meals) was served on regular trays.

Plaintiff indicated that since FSA Black took over Food Services his concerns have largely been rectified. Plaintiff indicated that there have been a few meals where he received Halal meat instead of Kosher meat. Plaintiff indicated that he has had issues resolved with Food Services when he receives something in error but is annoyed because it should have already been taken care of. Plaintiff's primary concern as it relates to Kosher meals is not the current Food Service Administrator, but that he is concerned if another Food Service Administrator takes over at FCI Leavenworth that he may have problems in the future.

Plaintiff confirmed that Kosher meals come in a prepackaged "TV dinner" like container and that all meals are clearly marked as whether they are Kosher or Halal. Plaintiff indicated there has been a couple different companies since he has been at FCI Leavenworth.

Plaintiff noted that Mr. McCloud in Food services has been rude in the past regarding the Kosher meal issue, but that he does not interact with him anymore. Plaintiff noted other Food Service staff were accommodating.

Plaintiff indicated that he completed Administrative Remedies relating to issues in his Amended Complaint. Plaintiff stated that his Oregon case pertained to similar claims at FCI Sheridan and that the case was still pending.

When asked about what he wanted, Plaintiff indicated he was seeking monetary compensation and that he has had ongoing battles everywhere he has been over these issues. Plaintiff further stated that he believed the Food Service issue was taken care of but was concerned about that changing in the future. Plaintiff would

4

like training on what is Kosher and what is not.

*Id*. at 6–8.

The Report also includes affidavits from staff. The Report includes an affidavit from Supervisory Chaplain Lonnie Sutton (Doc. 21–6, designated as Exhibit 4), and provides:

> Supervisory Chaplin Sutton indicates that Plaintiff has had the opportunity to either attend Chapel weekly or has had religious supplies brought to him in his Unit before sunset on the Sabbath. *Id*. at ¶ 7. Supervisory Chaplain Sutton explained that in September 2023, and shortly after Plaintiff arrived at FCI Leavenworth, he was informed that he could go down to the Chaplaincy Services for Chapel each week. *Id.* at ¶ 8. Plaintiff indicated that he did not want to do this and that he wanted to participate in the weekly services in his own cell. *Id*. After Plaintiff indicated that he wanted to participate in weekly services in his own cell, the required kosher grape juice and matzah were delivered to him by the Chaplaincy Department. *Id.* at ¶ 9. After additional inmates in Plaintiff's Unit indicated that they were of the Jewish faith and wanted kosher grape juice and matzah delivered for the Sabbath, it was determined that it would be easier for Chaplaincy Services if the inmates in the Unit were sent down to the Chapel where the supplies were located, rather than delivering the supplies to each inmate every week. *Id.* at ¶ 10. The inmate moves for Plaintiff's Unit were then structured so that all the inmates who wished to go to the Chapel for Sabbath services could go down to Chapel with sufficient time on Fridays. *Id.* at ¶ 10. . . . Plaintiff is aware when the structured moves are so that he can go down to the Chapel for Sabbath services. *Id.*
> Supervisory Chaplain Sutton indicated that in the unusual event FCI Leavenworth is on modified operations and a special move cannot be conducted, the kosher grape juice and matzah are delivered to each inmate who requires them for the Sabbath services. *Id.* at ¶ 11. Due to safety and security concerns, inmates are not permitted to have candles and matches in their cells. *Id.* Candles and matches are only provided in the Chaplaincy Services Department for services where their use can be supervised by staff. *Id.* Supervisory Chaplain Sutton has offered an electronic candle as an accommodation for when he cannot go down for Chapel during times of restricted movement, but Plaintiff has refused. *Id.* While Plaintiff has refused the electronic candle accommodation in these circumstances, either [sic] the Chaplaincy Department has delivered grape juice and matzah to Plaintiff for the Sabbath on numerous occasions over the previous year. *Id.*

Supervisory Chaplain Sutton indicated that the only time he is aware of Plaintiff missing either going to Chapel or receiving kosher grape juice or matzah in his cell, is when he initially arrived at FCI Leavenworth and refused to come down to Chaplaincy Services for the Sabbath service. *Id.* at ¶ 12. After the initial refusal, the Chaplaincy Services started bringing him the required supplies. *Id.* At present, Plaintiff generally comes down to Chaplaincy Services for the Sabbath Service. *Id.*

Supervisory Chaplain Sutton was made aware of the claim by Plaintiff that he interrupted the Hebrew blessing on or about June 29, 2024, when he took the burned match from him. *Id.* at ¶ 13. Supervisory Chaplain Sutton indicated that he did not interrupt the blessing on that date and explained that when he is present with the inmates for the Sabbath Friday evening services, the inmates are given the matches to light the candles. *Id.* at ¶ 14. For safety and security concerns, inmates are not permitted to keep the box of matches, so the Chaplain directs the inmates that they must discard the used matches in a safe location and return the box of matches. *Id.* at ¶ 14.

Supervisory Chaplain Sutton indicated that FCI Leavenworth does not provide Welch's grape juice for the Sabbath kiddush, and that only kosher grape juice is provided, and that it is either Kedem or Gefen brand kosher juice. *Id.* at ¶ [16].

Supervisory Chaplain Sutton indicated that the guidance he has received from the BOP as it relates to the Sabbath kiddush, which was provided in consultation with faith leaders, is that the requirement for kiddush is that there is a full cup of no less than 6 oz. of kosher grape juice. *Id.* at ¶ 17. However, if an inmate requests to make his own kiddush, the request is accommodated. *Id.*

Supervisory Chaplin Sutton indicated that the celebratory services for the Sabbath also require two whole matzahs or challahs. *Id.* at ¶ 18. Although, two matzah for the group should suffice, Supervisory Chaplain provides two matzahs per inmate. *Id.* Supervisory Chaplain Sutton indicated that when Plaintiff comes to retrieve the kosher grape juice and matzah before the Sabbath, he is typically given three boxes of grape juice that are each 6.75 oz, as well as a box of matzah (14 matzahs). *Id.* at 19. When the supplies are delivered to Plaintiff, he and the other inmates [ ] receive the same amount. *Id.* at ¶ 20.

Supervisory Chaplain Sutton indicated that has a Chaplain for all faiths at FCI Leavenworth, he does not remind each adherent of a religion to practice their faith and attend their own religious services. *Id.* at 21. Generally, inmates are required to request the accommodation they need and then it is accommodated. *Id.* One accommodation that Plaintiff could

>> request is that he be placed on an "out-count" for each Friday so he can go down to Chapel ahead of the institutional count, which takes place starting at 4:00 pm every day. *Id*. at 22. This would assist Plaintiff in making sure he is at Chapel well ahead of sunset, particularly in winter when the sun sets earlier. *Id*. Supervisory Chaplain Sutton indicated that the current sunset time would make placing him on out-count as irrelevant. *Id*.
>
>> Supervisory Chaplain Sutton indicated that Food Services is responsible for providing the religious diets to inmates, but that it is his department that is responsible for tracking the religious preference for committed inmates. *Id*. at ¶ 23. The information as to who requires a religious diet is provided to Food Services, and at present there are approximately 17 inmates at FCI Leavenworth who receive a kosher religious diet. *Id*. Generally, inmates with Jewish religious preferences who choose to observe Jewish religious dietary laws are eligible for the Certified Religious Food component of the Alternate Diet Program. *Id*. at ¶ 24.

*Id*. at 9–12.

The Report also includes the affidavit of Food Service Administrator ("FSA") William Black (Doc. 21–7, designated as Exhibit 5). *Id*. at 12. FSA Black arrived at FCIL in July 2024, after the position had been vacant since February 2024, when former FSA Victor Sears left FCIL. *Id*. The Report sets forth in detail how the religious dietary requirements are handled at FCIL. *Id*. at 12–13. The Report also provides that "FSA Black further recounted that he has had several interactions and conversations with inmate Strobel regarding his concerns as it relates to Food Services and Kosher meals." *Id*. at 14 (citing Ex. 5, at ¶ 13). "FSA Black believes that he has addressed all of Plaintiff[']s concerns." *Id*. (citing Ex. 5, at ¶ 13).

The Report also states that Plaintiff has not exhausted his administrative remedies. *Id*. at 16. It states that "[w]hile Plaintiff has raised some issues through the Administrative Remedy Process, a review of Plaintiff's Administrative Remedy Data indicates he has not exhausted his administrative remedies with respect to the subject matter of the claims that he makes in the Amended Complaint." *Id*. (citing Exhibit 7, Plaintiff's Administrative Generalized Retrieval).

The Report specifically addresses administrative remedies received from Plaintiff while he was housed at FCIL, as follows:

> Administrative Remedy ID No. 1193036-R1 & R2, which the abstract describes the request as "Recreation Activities," were rejected due there being no record of filing at the institution level first.[] Exhibit 7 at pp. 24 & 26-27. Plaintiff appealed this rejection to the Central Office Level (indicated by the A1 suffix), and it was rejected for the stated reason that, "Concur with rationale of Regional Office and/or institution for rejection. Follow directions provided in prior rejection notices." *Id.* at p. 27 and Exhibit 8, Remedy Status Table (explaining the rejection code "DIR").
>
> Administrative Remedy No. 1195510-F1 was received on or about March 28, 2024, at the Institution level with the abstract as "Modified Operations During Lockdown." Exhibit 7 at p. 25. This Administrative Remedy contained multiple requests related to the "Modified Operations During Lockdown," including concerns regarding "outdoor recreation/yard," "access to leisure library [and] Education," and "access to chapel library or chapel, thus no shabbat candle lighting." Exhibit 9, Regional Administrative Remedy Packet for 1195510-R1. This Administrative Remedy was appealed to the Regional Level. *Id.* at p. 31-32. After receiving a response from the Regional Level, Plaintiff attempted to appeal the request to BOP Central Office, but it was rejected due to Plaintiff not submitting the necessary information or appeal form. Exhibit 7 at p. 32 and Exhibit 8 (explaining rejection codes). While Plaintiff's appeal to Central Office was rejected, he was told that he could correct the issues and resubmit. *Id.*  Plaintiff did not correct the issues and resubmit. *Id.* As Plaintiff did not resubmit his appeal with the requested information, he did not exhaust the Administrative Remedy process related to this claim.
>
> Administrative Remedy ID No. 1179998-R2 was received on or about October 30, 2023, and included the abstract "Access to Personal Legal Property." Exhibit 7, p. 23. Remedy 1179998-R2 was rejected at the Regional Level because he did not file a copy of the Warden's Response and/or a BP-9. *Id.*
>
> Administrative Remedy ID No. 1179999-R1 was received on or about October 30, 2023, and included the Abstract "Access to Religious Items in SHU." Exhibit 7, p. 22. Remedy 1179999-R1 was rejected at the Regional Level because he did not file a BP-9 request through the institution for the Warden's review and response before filing an appeal at the Regional Level and because it was not sensitive. *Id.* and Exhibit 8.

*Id*. at 17–18. The Report further provides that Plaintiff did not exhaust any of these referenced

Administrative Remedies, and although "he did seek to appeal Remedy ID No. 1195510-A1 to the Central Office Level, it was rejected because he did not provide the necessary information" and "Plaintiff was told he could resubmit Remedy ID No. 1195510-A1 with the necessary information, but did not." *Id*. at 18.

### III. DISCUSSION

The Court found in the M&O that: any request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff fails to allege a physical injury; any official capacity claims for monetary damages against federal officials is barred by sovereign immunity; although the Supreme Court has held that damages claims are permissible in individual-capacity suits under RFRA, Plaintiff is subject to § 1997e(e); Plaintiff cannot sue Defendants in their individual capacities for injunctive relief; and mere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden on his sincerely-held religious beliefs.

The Court found in the M&O that it was unable to determine if Plaintiff is entitled to injunctive relief against Defendants in their official capacities for violations of the First Amendment or RFRA. The Court noted that Plaintiff states that the arrival of FSA Black remedied some issues, but the remedies "do not negate the harm, irreparable harm done by Sears & Shadoan." (Doc. 19, at 11.) The Court found that it was unclear which issues had been remedied and which issues remained. The Court also found that Defendant Hudson is no longer the FCIL Warden, and therefore would not be able to provide injunctive relief to Plaintiff.

The Court found that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate FCIL officials. The Court found that a *Martinez* Report was warranted in light of Plaintiff's allegations regarding the availability of injunctive

relief.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).

Based on the Report, it appears that Plaintiff is not entitled to injunctive relief.  The Report provides that Plaintiff has not exhausted his administrative remedies with respect to the claims he makes in his Amended Complaint.  Regarding Chapel attendance, the Report provides that Plaintiff either generally attends in the Chaplaincy Department or has grape juice and matzah brought to his Unit.  "In times where the sun[]sets earlier, Plaintiff should request the accommodation to be placed on an out-count if he believes he needs additional time to make it down to the Chaplaincy Department." (Doc. 21–1, at 25.)  "Overall, the issue of Chapel attendance for Sabbath services does not appear to be a consistent or weekly problem and the issue of Religious meals appears to be resolved."  *Id*.

Based on the Report, the Court is considering dismissal of Plaintiff's claims.  However, the Court will grant Plaintiff an opportunity to respond to the Report and to show good cause why his claims should not be dismissed for failure to state a claim.

## IV. Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims."  *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).  The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence."  *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)).  Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact.  *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look

to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes."). In light of the Report, the Court is considering dismissal of this matter for failure to state a claim.

Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Failure to respond by the Court's deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **March 7, 2025,** in which to respond to the Report at Doc. 21, and to show good cause, in writing to the undersigned, why Plaintiff's claims should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

Dated February 7, 2025, in Kansas City, Kansas.

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**
